# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LISA M. KING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 15-1293-JWL |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Exercising jurisdiction under § 405(g) of the Act, and finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.  Background**

Plaintiff applied for DIB, alleging disability beginning December 7, 2011. (R. 14, 164). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. She argues that the Administrative Law Judge (ALJ) erred at step three of the sequential evaluation process in finding that

Plaintiff's impairments do not meet or equal the severity of Listing 1.04A, and also erroneously determined Plaintiff's claim at step four.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the

economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds no error in the Commissioner's final decision.

## II.     Listing 1.04A

As the ALJ noted in his decision, Plaintiff injured her back in December, 2011. (R. 297).  She had an MRI of the lumbar spine on December 12, 2011 which revealed degenerative changes to her discs at the L4-S1 levels, more pronounced at the L4-5 level, and encroachment on both neural foramina at the L4-5 level.  (R. 315).  She began physical therapy as treatment for the injury on December 23, 2011.  (R. 297).  She was evaluated by Dr. Weimar, and ultimately received lumbar fusion surgery by Dr. Weimar on September 7, 2012.  (R. 378-79).  After the surgery, Plaintiff continued to experience back pain and continued seeing Dr. Weimar.  Plaintiff first saw Dr. Harris on referral from Dr. Weimar on November 30, 2012.  (R. 408).  A CT scan and myelogram on February 20, 2013 revealed "[n]o evidence of spinal stenosis or significant neural foraminal encroachment."  (R. 489).  By May 2, 2013 Dr. Harris had diagnosed Plaintiff with failed back surgery syndrome.  (R. 511).  On October 16, 2013 another lumbar myelogram and CT scan revealed no significant central canal or neuroforaminal narrowing from T12 through L5, and revealed that "interbody fusion material at L5-S1 partially effaces the thecal sac with no significant neuroforaminal or central canal narrowing."  (R. 581-82).  Finally, an MRI of the lumbar spine on February 11, 2014 revealed "small to moderate central and right paracentral disc protrusion at L5-S1 with

mild and lateral recess narrowing though no significant stenosis or impingement." (R. 528).

### A. Step Three Standard

The Commissioner has provided a "Listing of Impairments" which describes certain impairments that she considers disabling. 20 C.F.R. § 404.1525(a); see also, Pt. 404, Subpt. P, App. 1 (Listing of Impairments). If a claimant's condition meets or equals the severity of a listed impairment, that impairment is conclusively presumed disabling. Williams, 844 F.2d at 751; see Bowen v. Yuckert, 482 U.S. 137, 141 (1987) (if claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled"). However, Plaintiff "has the burden at step three of demonstrating, through medical evidence, that h[er] impairments 'meet all of the specified medical criteria' contained in a particular listing." Riddle v. Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in Zebley) (brackets added)). "An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify" to meet or equal the listing. Zebley, 493 U.S. at 530.

"The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of h[er] age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" Zebley, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)

5

(brackets added)). The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." Yuckert, 482 U.S. at 153. "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively." Caviness v. Apfel, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

Medical equivalence to a listing may be established by showing that the claimant's impairment(s) "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). The determination of medical equivalence is made without consideration of vocational factors of age, education, or work experience. 20 C.F.R. § 404.1526(c).

Listing 1.04A provides:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.

With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.04A.

To meet Listing 1.04, an impairment must first meet either criterion of paragraph 1.04: (I) compromise of a nerve root or (II) compromise of the spinal cord. 20 C.F.R., Pt.

404, Subpt. P, App. 1 § 1.04.  In addition, Listing 1.04A requires:  (1) neuro-anatomic distribution of pain, (2) limitation of motion of the spine, (3) motor loss accompanied by either (a) sensory loss, or (b) reflex loss, and (only if the lower back is involved) (4) positive straight-leg raising, while both (a) sitting and (b) supine.  Id. § 1.04A.

### B.     The Parties' Arguments

Plaintiff argues, based on Dr. Weimar's treatment notes, that Plaintiff had nerve root compression characterized by (1) neuro-anatomic distribution of pain, (2) limitation of motion of the spine, (3) motor loss accompanied by (a) sensory loss, and (b) reflex loss, and (4) positive straight-leg raising both before and after her spinal fusion surgery, and therefore met the criteria of Listing 1.04A.  (Pl. Br. 5-12).  She also argues that the ALJ did not consider whether her condition medically equals Listing 1.04A, particularly considering the effects obesity might have in making the determination of equivalency.  Id. at 13-14.

The Commissioner points out that it is Plaintiff's burden to show that her impairment meets all of the criteria of a listing or to show medical findings equal in severity and duration to the criteria of a listing.  (Comm'r Br. 4).  She argues that in this case Plaintiff has not shown the requisite inability either to ambulate effectively or to perform fine and gross movements effectively.  Id. at 5.  She also argues that Plaintiff "does not suggest how her symptoms, signs, and laboratory findings [are] equivalent in severity and duration to . . . any listed impairment."  Id. at 6.  She argues that Plaintiff has not met her burden to demonstrate she is unable to perform any substantial gainful

7

activity, and she explains how, in her view the evidence supports the ALJ's determination Plaintiff is not disabled. Id. at 6-10.

In her Reply Brief, Plaintiff argues that the Commissioner did not attempt to support the ALJ's finding that the record does not contain evidence of nerve root compression. (Reply 1-3). She points out that neither the inability to ambulate effectively nor the inability to perform fine and gross movements effectively is a criterion of Listing 1.04A. Id. at 3. Finally, she distinguishes the case relied upon by the Commissioner in arguing that Plaintiff did not suggest how the evidence demonstrated equivalence to Listing 1.04A. Id. at 3-4.

**C.    Analysis**

The question for the court regarding this issue is whether the Commissioner's final decision--the ALJ's decision in this case--demonstrates that she applied the correct legal standard at step three of the sequential evaluation process, and whether the record evidence supports the ALJ's factual findings in her step three determination. Lax, 489 F.3d at 1084; accord, White, 287 F.3d at 905. The court agrees that effective ambulation and effective fine and gross movements are not criteria relevant to consideration of Listing 1.04A. 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.04A. Moreover, the Commissioner's Brief does not argue that the ALJ correctly found that the record does not contain evidence of nerve root compression. But, the question before the court remains whether the ALJ applied the correct legal standard and whether the record evidence supports her decision, not whether the Commissioner correctly and adequately

briefed the issues before the court. The court finds that the answer to both questions relevant on judicial review is yes--the ALJ applied the correct legal standard at step three, and the record evidence supports her step three finding that Plaintiff's condition does not meet or medically equal the severity of a listed impairment.

Plaintiff acknowledges that the ALJ relied upon a December 2011 MRI which the radiologist interpreted to show "only 'very minimal' encroachment on both neural foramina at L4-5." (R. 19) (quoting Ex. 1F/28 (R. 315)). But she makes much of the fact that Dr. Weimar interpreted the same MRI to show significant degenerative disc disease, mild disc space collapse, bilateral foraminal stenosis, and nerve root compression, and argues that the ALJ did not resolve the conflicting interpretations. However, the ALJ recognized the conflicting interpretations and resolved the conflict by preferring the interpretation of the radiologist (a specialist in radiologic interpretation) to that of Dr. Weimar. (R. 19). Moreover, she addressed the conflict once again when she summarized the record evidence, and provided further explanation why she discounted Dr. Weimar's interpretation. (R. 20-21). She noted that x-rays obtained on April 18, 2012 supported her interpretation--they were essentially normal showing normal alignment, no subluxation, no spondylosis, and well maintained vertebral height. (R. 20) (citing Ex. 1F/14 (R. 301)). And, she noted a discogram and CT scan on June 20, 2012 which showed grade III radial tears at L4-5 and L5-S1, leading to ventral disc bulges or protrusions. (R. 21) (citing Ex. 3F (R. 336-37)). And, as her decision implies, there is no mention in the CT scan and discogram of spinal stenosis, neural foraminal encroachment,

9

or nerve root compression. It is the ALJ's duty to resolve conflicts in the evidence, and she has done so here. That she discounted Dr. Weimar's interpretation, or that Plaintiff disagrees with her resolution does not require a different finding, because the record evidence supports her resolution.

Plaintiff argues that the CT scan and discogram also showed "low back pain and bilateral lower extremity radicular symptomatology, right side greater [than] left, [in] an approximate L4-5 pattern, with pain refractory to all conservative measures up to this point." (Pl. Br. 6) (citing 486-87) (brackets supplied to reflect quotes from R. 486). The findings which Plaintiff asserts were shown by the discogram were actually made in a "Preop Diagnosis," and reiterated in a "Postop Diagnosis" in the records cited. (R. 486). These are a physician's "diagnoses" and are not "findings" demonstrated by the procedures themselves. As noted above, the ALJ properly explained why she had discounted Dr. Weimar's diagnostic interpretation of the radiologic reports, and Plaintiff's reference to the same interpretation appearing at a different place in the record does not make it more persuasive. Moreover, the record Plaintiff appeals to is not clear how it relates to the discogram cited by the ALJ. The record, in Plaintiff's view relates to the same discogram, but it is dated June 21, 2012 whereas the report relied upon by the ALJ is dated June 20, 2012 and is denominated a "CT scan of the lumbar spine post discographies." The conflicting dates add further confusion to Plaintiff's argument. The court may not decide in the first instance what all this means, but the ALJ is not required

to accept a physician's "diagnoses" in the face of contrary laboratory reports, especially when she has already explained how the record supports her decision.

Although the record is clear, as the ALJ found, that Plaintiff had degenerative disc disease of the lumbar spine with disc bulges and resulting pain, the ALJ properly discounted Dr. Weimar's opinion that before her surgery Plaintiff had "nerve root compression" as defined in the Listings, and Plaintiff does not point to record evidence that requires a different finding. Moreover, if Dr. Weimar were correct that Plaintiff had nerve root compression, that condition was corrected by surgery on September 7, 2012, and therefore did not meet the one year duration requirement for disability.

The court also finds that the ALJ properly found no nerve root compression after Plaintiff's lumbar fusion surgery. In this regard, the ALJ relied upon a "lumbar CT scan and myelogram in February 2013 [that] showed <u>no evidence of spinal stenosis or significant neural foraminal encroachment</u>" (R. 19) (emphasis in hearing decision) (citing Ex. 19F (R. 488-90)); "[a]nother lumbar myelogram and CT scan in October 2013 [showing] normal alignment of the lumbar spine and no significant narrowing," <u>id.</u> at 21 (citing Ex. 34F/3 (R. 582)); and a lumbar MRI in February 2014 showing "mild lateral recess narrowing, but <u>no significant stenosis or impingement</u>." <u>Id.</u> at 19, (emphasis in hearing decision) (citing Ex. 25F (R. 527-28)).

The record supports the ALJ's findings in this regard. The February 20, 2013 lumbar CT report states, "No evidence of spinal stenosis or significant neural foraminal encroachment" (R. 490), and the lumbar myelogram report dated the same date states,

"No significant spinal stenosis appreciated." (R. 490). Similarly, the report of the lumbar CT scan and myelography dated October 16, 2013 states, "Normal alignment of the lumbar spine," and "no significant neuroforaminal or central canal narrowing." (R. 582) (all caps omitted). Finally, the report of an MRI performed on February 11, 2014 states, "small to moderate central and right paracentral disc protrusion at L5-S1 with mild and lateral recess narrowing though no significant stenosis or impingement." (R. 528).

Plaintiff relies upon Dr. Weimar's treatment notes on follow-up after the surgery to assert that "[s]he continued to have nerve root compression even after the surgery removed the original cause of the compression." (Pl. Br. 7) (citing R. 398, 473, 506). To be sure, each of the treatment notes cited contains Dr. Weimar's "Assessment" including lumbar canal stenosis, and nerve root compression on October 30, 2012, January 28, 2013, and April 12013, all after the lumbar fusion surgery in September 2012. However, it appears that Dr. Weimar's "Assessment" is merely his summary of the diagnoses for which he was treating Plaintiff and is not a statement that nerve root compression or lumbar canal stenosis remained despite the lumbar fusion surgery. The court reaches this conclusion because this assessment appears unchanged in each of Dr. Weimar's treatment notes both before and after the surgery--beginning on April 17, 2012 after he reviewed the December 12, 2011 MRI report and determined it showed "bilateral foraminal stenosis and some mild nerve root compression." (R. 363); see also (R. 349-50, 398, 506, 572, 574, 576, 578). This seems to be confirmed by the fact that in his treatment note from April 16, 2013 Dr. Weimar stated in the "Imaging" section of his report that he had

reviewed a lumbar CT Scan and myelogram and noted "No significant canal or foraminal stenosis." (R. 506, 572). Immediately thereafter, in the "Assessment" section of his note, Dr. Weimar once again stated his "Assessment" of lumbar canal stenosis, and nerve root compression. Despite her contrary arguments, Plaintiff cannot show nerve root compression within the meaning of Listing 1.04 either before, or especially after, surgery.

Plaintiff's allegation of error in failing to consider whether Plaintiff's condition including obesity is medically equivalent to Listing 1.04A, is no more helpful to her cause. As noted above, Plaintiff has the burden at step three to demonstrate that her impairments are at least equal in severity and duration to the criteria of a listed impairment. 20 C.F.R. § 404.1526(a). Although Plaintiff's Brief acknowledges the criteria of Listing 1.04A and purports to cite to record evidence showing the presence of each criteria in her argument that her condition meets the criteria of the Listing, and although she implies that obesity combines with her back problems to medically equal the severity of the Listing, she does not explain how obesity causes her condition to be equal in severity and duration to each of the criteria of Listing 1.04A. Plaintiff has not met her burden at step three, and the court will not attempt to meet that burden for her.

## III.   Step Four

Plaintiff asserts that her step three arguments "also apply to the ALJ's erroneous Step 4 determination." (Pl. Br. 14). But, having failed to show error at step three, Plaintiff's reliance upon her earlier arguments is unavailing. Further, Plaintiff's arguments regarding Step Four are largely a contrast of her view of the evidence with that

13

of the ALJ, and an implicit request that the court reweigh the evidence, which it may not do.  Flaherty v. Astrue, 515 F.3d 1067, 1070 (10th Cir. 2007).  To the extent Plaintiff makes additional arguments of error at step four, the court briefly addresses each of them.

In a single sentence, Plaintiff argues that it was error for the ALJ to accord significant weight to the state agency consultant's opinion, but fail to credit his opinion that Plaintiff's migraines were severe.  (Pl. Br. 18).  However, Plaintiff ignores the state agency consultant's explanation of his RFC assessment, and fails to recognize his explanation that "[i]t was felt that cl[ai]m[an]t was having analgesic/decongestant rebound headaches that were abated with cessation of med[ication]s."  (R. 87).

Plaintiff asserts that the ALJ failed to consider the regulatory factors for evaluating treating source medical opinions (Pl. Br. 19), but her argument conflates consideration of the regulatory factors with discussion of those factors, and ignores that a court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003)).  Here, the ALJ stated that he had considered the medical opinions in accordance with 20 C.F.R. § 404.1527, and Social Security Rulings (SSR) 96-2p, 96-5p, and 96-6p.  (R. 19).  The court's general practice is to take a tribunal at its word when it says it has considered a matter, and it sees no reason to depart from that practice here.  Hackett, 395 F.3d at 1172-73.  The ALJ weighed the medical opinions and explained the

weight accorded and the reasons for that weight, and the court is able to follow her reasoning.  More is not required.

Similarly, Plaintiff asserts the ALJ failed to consider many of the credibility factors she should have considered.  (Pl. Br. 20).  Once again, Plaintiff conflates consideration with discussion and ignores that the court does not require a formalistic factor-by-factor recitation of the evidence.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  So long as the ALJ sets forth the specific evidence she relies on in evaluating the claimant's credibility, the dictates of Kepler are satisfied.  Here again, the ALJ stated she considered Plaintiff's allegations of symptoms in accordance with 20 C.F.R. § 404.1529 and SSRs 96-4p and 96-7p.  (R. 19).  She found Plaintiff's allegations only partially credible, and explained the evidentiary bases for her determination.  Id. at 20-22.  The court is able to follow her reasoning, and Plaintiff has not pointed to record evidence which negates or precludes that finding.

Plaintiff has shown no error in the decision at issue.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated this 15th  day of December 2016, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**